Filed 4/29/25  In re A.E. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.E., A Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>A.V.,<br><br>    Defendant and Appellant. | G065010<br><br>(Super. Ct. Nos. 20DP1145; 20DP1145A)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Daphne G. Sykes, Judge. Conditionally reversed and remanded with directions.

        Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

A.V. (Mother) appeals from a juvenile court order terminating her parental rights to her child A.E. (Minor) following a hearing held under Welfare and Institutions Code section 366.26.[1] She contends the Orange County Social Services Agency (SSA) and the juvenile court failed to sufficiently inquire into claims of Minor's potential Native American ancestry, as mandated by the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA) and related California law (§ 224 et seq.). SSA concedes the error and acknowledges the challenged order must be conditionally reversed. We thus conditionally reverse the order and remand this matter for further proceedings to ensure compliance with ICWA.

FACTS

Mother and D.E. (Father) have two children together: Minor and an older child (Sibling).

In 2020, Minor, shortly after being born, was taken into protective custody, detained by the juvenile court, and placed temporarily with SSA. The removal was prompted by SSA's concerns for Minor's welfare based on allegations in an open dependency case concerning Sibling.

In 2019, when Sibling was three months old, she suffered "a brain bleed" and several "bone fractures in her ribs and in her lower and upper extremities," in different stages of healing. Emergency surgery was

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

required to drain blood from her brain. SSA secured a hospital hold for Sibling, placed her in foster care, and initiated dependency proceedings. Father was later arrested for felony child abuse and placed into custody awaiting trial. Mother moved back in with the maternal grandmother. The juvenile court sustained a section 300 petition on behalf of Sibling, finding Father intentionally abused her, Mother failed to protect her, and both parents failed to ensure timely medical care. The court further found the parents engaged in domestic violence and Father had an unresolved anger management problem. Reunification services were ordered for Mother but not Father.[2]

SSA, citing the same safety issues identified in Sibling's case, filed a section 300 petition on behalf of Minor, based on allegations of failure to protect, no provision for support, and abuse of Sibling. SSA alleged Father has a history of violence against Mother and others. Minor was taken into protective custody and placed in the same foster home as Sibling.

At a continued detention hearing, the juvenile court released Minor to Mother, with strict conditions in place. Mother was not to communicate with Father and to contact the police or SSA if he appeared.

At a combined jurisdiction and disposition hearing, the juvenile court maintained Minor with Mother with family maintenance services in place. As with Sibling, the court bypassed reunification services for Father.

For the next year and a half, Minor's case remained open mainly based on concerns Mother might reconnect with Father. Father was incarcerated during most of this period, having pleaded guilty to felony child

---

[2] Ultimately, in March 2023, the juvenile court terminated parental rights as to Sibling.

3

abuse offense causing great bodily injury to a child under the age of five. To a lesser extent, SSA was concerned with Mother's marijuana use and her apparent mismanagement of public assistance funds. SSA discovered Mother had placed money in Father's prison bank account and had been in regular phone contact with him since late 2021.

In June 2023, Father, while out on parole, was found with Minor at Mother's home. Father was arrested for being in Orange County, a violation of his parole terms.

SSA secured a protective custody warrant and placed Minor with the maternal grandmother. SSA filed a supplemental petition under section 387, alleging Mother allowed Father access to Minor despite knowing he was dangerous, struggled to provide basic care for and supervision of Minor, and may have a substance abuse problem. The juvenile court ordered Minor detained from Mother.

At a continued disposition hearing in March 2024, the juvenile court maintained Minor with the maternal grandmother and bypassed reunification services for the parents based on their failure to reunify with Sibling.

Mother filed a section 388 petition asking the juvenile court to modify its March 2024 order and either return Minor or order additional reunification services. That petition was denied.

The section 366.26 hearing spanned four court dates in November and December 2024. Ultimately, the juvenile court terminated parental rights and ordered Minor placed for adoption. The court also found ICWA did not apply. The court did not elaborate further on its ICWA finding.

SSA's reports provide the following information on its ICWA investigation. Both parents denied Native American Indian heritage.

4

Although the maternal grandmother initially denied it, she later indicated she might have Native American Indian heritage, based on an Ancestry.com test revealing she had 2 percent Native American ancestry.

The paternal grandmother also alleged potential Native American Indian heritage, stating one of her great grandmothers mentioned that her ancestors had Native American ancestry. No further details were within the paternal grandmother's knowledge and all her relatives are deceased except for one cousin.

Based on the representations of the maternal grandmother and the paternal grandmother, SSA initiated a further inquiry. An "ICWA Social Worker" emailed an inquiry letter and family tree to the Bureau of Indian Affairs (BIA). A copy of the family tree does not appear in the record. The BIA responded that it did not determine tribal eligibility or maintain a list of persons possessing Indian blood. SSA determined that, based on the information gathered during the initial inquiry, it could not identify a tribe potentially affiliated with Minor.

## DISCUSSION

The sole issue raised by Mother on appeal is whether SSA and the juvenile court complied with their respective obligations under ICWA. She contends conditional reversal is required because SSA did not ask all identified extended family members about their Native American ancestry and thus the juvenile court's implied finding of an adequate inquiry constituted an abuse of discretion. SSA concedes the ICWA errors and acknowledges conditional reversal of the parental rights termination orders is required to allow for ICWA compliance. We agree.

"'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian

children living off of a reservation. [Citations.] Congress enacted ICWA to further the federal policy "'that, where possible, an Indian child should remain in the Indian community . . . .'"'" (*In re A.R.* (2022) 77 Cal.App.5th 197, 203.) To that end, "ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see *In re J.C.* (2022) 77 Cal.App.5th 70, 77 (*J.C.*).)

In California, section 224.2 "codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the BIA." (*Isaiah W.*, *supra,* 1 Cal.5th at p. 9.) The statute "creates three distinct duties regarding ICWA in dependency proceedings. First, from [SSA]'s initial contact with a minor and [their] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then [SSA] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

"[O]nce a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1132 (*Dezi C.*).) Absent contrary law or custom of the Indian child's tribe, the term "extended family member"

includes "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)

"""'"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.'" [Citation.] "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know . . . the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."'" (*J.C., supra*, 77 Cal.App.5th at p. 78.) The court must make a determination concerning ICWA's applicability before termination of parental rights even if it previously found ICWA inapplicable. (*Dezi C., supra*, 16 Cal.5th at p. 1141.)

Here, the record on appeal reflects SSA was aware of a paternal aunt and a maternal great-grandmother. An SSA report indicated that during the case the paternal grandmother and the paternal aunt had called the maternal grandmother. Another SSA report stated the maternal grandmother described having "a very good relationship" with the maternal great-grandmother. The record, however, doesn't reflect any efforts to contact the paternal aunt or the maternal great-grandmother. Nor does the record show any efforts by SSA to obtain information for the paternal and maternal grandfathers. On this record, we must conclude the juvenile court erred in finding that ICWA does not apply and the termination order must be conditionally reversed to allow for ICWA compliance. (*Dezi C., supra*, 16 Cal.5th at p. 1152.)

DISPOSITION

The termination order is conditionally reversed. The matter is remanded to the juvenile court with the following directions. Within 30 days of issuance of the remittitur, SSA must file a report demonstrating compliance with its duty of further inquiry under ICWA and sections 224.2 and 224.3. Within 45 days of issuance of the remittitur, the court must conduct a hearing to determine whether SSA's investigation satisfied its duties under ICWA. The court may also consider any other ICWA-related issues that may have arisen during this appeal. The court has the discretion to adjust these time periods on a showing of good cause.

On remand, if the juvenile court finds a proper and adequate further inquiry and due diligence have been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), it shall reinstate the termination order. If the court concludes ICWA applies, it shall proceed with ICWA and California implementing provisions. (See 25 U.S.C. § 1912, subd. (a); §§ 224.2, subd. (i)(1); 224.3, 224.4.) To expedite matters, we invite the parties to stipulate to the immediate issuance of the remittitur. (Cal. Rules of Court, rule 8.272(c)(1).)

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.